## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

THE BALMER FUND, INC. A KANSAS
NOT-FOR-PROFIT CORPORATION, AND,
ROSALEA HOSTETLER,

     *Plaintiffs,*

vs.                                                                    Case No. 17-1046-EFM

CITY OF HARPER, KANSAS,

     *Defendant.*

## MEMORANDUM AND ORDER

This case involves a dispute regarding the demolition of a hotel and the personal property contained within the hotel.   Plaintiffs, The Balmer Fund, Inc. and Rosalea Hostetler, allege that Defendant, the City of Harper, Kansas, violated their due process rights, converted their property, committed a trespass upon their property, intentionally inflicted emotional distress on Hostetler, negligently inflicted emotional distress on Hostetler, intentionally interfered with Plaintiffs' prospective business expectancy and advantage, and acted negligently when it demolished Plaintiffs' hotel and personal property contained within the hotel.

This matter comes before the Court on Defendant's motion for summary judgment and/or motion to dismiss (Doc. 20) and Plaintiffs' motion to strike (Doc. 29).  For the reasons stated below, Defendant's motion is granted in part and denied in part, and Plaintiffs' motion is denied.

## I.     Factual and Procedural Background[1]

In 1999, Rosalea Hostetler quitclaimed a hotel located at 121 West Main Street, Harper, Kansas, to The Balmer Fund, Inc., while reserving a life estate in the property.  In 2013, Plaintiffs hired Engineering Consultants, P.A., to evaluate the structural integrity of the hotel. Plaintiffs' consultants confirmed that the hotel was deteriorating, found that saving the hotel would require significant money and effort, recommended various repairs, and recommended that the public not be allowed in the building or along the sidewalk near one corner of the building until repairs are completed.  In 2014, the City hired D&B Engineering, LLC, to inspect the property, and on May 22, 2014, D&B performed an inspection of the exterior of the hotel. D&B determined that none of the repair work recommended in the 2013 evaluation had been started, and that protective measures for the public were needed right away.

On June 2, 2014, a special City Council meeting was held to discuss the hotel.  Plaintiffs attended the meeting.  The City Council passed a resolution declaring the hotel an immediate hazard, and the City immediately padlocked the hotel and restricted access to it.  On July 14, 2014, the City Council began advertising for bids to demolish the hotel, and on August 25, 2014, the City Council began opening bids for the hotel's demolition.

Defendant sent Plaintiffs a letter on August 27, 2014, requesting that Plaintiffs provide proof of their financial ability to pay for repairs to make the hotel safe.  Plaintiffs did not provide a statement documenting their ability to pay for the necessary repairs by the City Council's meeting held on September 8, 2014, and the City Council voted to accept a bid to demolish the hotel for $148,000.

---

[1] The Court has set forth the uncontroverted facts in the light most favorable to Plaintiffs.

The next day, Plaintiffs filed a Petition in the Thirtieth Judicial District, District Court, Harper County, Kansas, requesting an order temporarily restraining Defendant from taking steps to demolish the hotel.  Approximately one week later, the state court issued an Agreed Journal Entry.  The order included the following excerpts:

> 1. Plaintiffs represent that they have secured a plan from Richard B. Kraybill . . . to make the building and premises at 121 West Main Street, . . . safe . . .
>
> 2. Plaintiffs shall have until January 15, 2015 to secure $110,000 cash to pay for the improvements and repairs needed to complete the Kraybill plan, . . .
>
> 3.  Should Plaintiffs secure and document possession of the $110,000 cash on or before January 15, 2015 then Plaintiffs will have until July 1, 2015 to complete the Kraybill plan . . . .
>
> 4.  Should Plaintiffs fail to secure and document possession of the $110,000 cash by January 15, 2015 or having successfully secured the funds fail to complete and document completion of the Kraybill plan by July 1, 2015 then the Defendant may proceed with demolition of the building at 121 West Main.
>
> . . . .
>
> 7.  Should the Plaintiffs successfully complete the Kraybill plan then this Court case will be dismissed, the planned demolition will not take place and possession to the building and property will be relinquished to Plaintiffs, otherwise Defendants shall remain in the exclusive possession of the building and premises at 121 West Main, Harper, Kansas.

Plaintiffs did not provide notice that they had secured $110,000 by January 15, 2015, and on January 20, 2015, the City signed a demolition contract and notice to proceed with the demolition.  The City Council scheduled the demolition work to begin on February 26, 2015.

On March 5, 2015, the City Council convened a special meeting at Plaintiffs' request.  At the meeting Plaintiffs revealed that they had secured $21,000 for repairs, but the City Council did not vote to breach the demolition contract.  The City Council asked Plaintiffs if they had plans to remove property from the hotel before demolition, and Plaintiffs responded that there

were no plans.  The parties disagree as to when demolition actually began, but Plaintiffs allege that the hotel and all of its contents were demolished on March 6, 2015.

On February 24, 2017, Plaintiffs filed this action alleging violations of Plaintiffs' due process rights, conversion, trespass, intentional infliction of emotional distress, negligent infliction of emotional distress, intentional interference with prospective business advantage, and negligence.

## II.        Legal Standards

### A.        Motion for Summary Judgment

Summary judgment is proper if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2]  A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3]  The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[4]  If the movant carries its initial burden, the nonmovant may not simply rest on its pleading, but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[5]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—

---

[2] Fed. R. Civ. P. 56(a).

[3] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citation omitted).

[5] *Id*. (citing Fed. R. Civ. P. 56(e)).

conclusory allegations alone cannot survive a motion for summary judgment.[6]  The Court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[7]

**B.     Motion to Dismiss**

Under Rule 12(b)(6), Defendant may move for dismissal of any claim where Plaintiffs have failed to state a claim upon which relief can be granted.  Upon such motion, the Court must decide "whether the compliant contains 'enough facts to state a claim to relief that is plausible on its face.' "[8]  "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[9]  The Court does not "weigh potential evidence that the parties might present at trial," but "assess[es] whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[10]  In determining whether a claim is facially plausible, the Court must draw on its judicial experience and common sense.[11]  All well-pleaded facts in the complaint are assumed to be true and are construed in the light most favorable to Plaintiffs.[12]  Allegations that merely state legal conclusions, however, need not be accepted as true.[13]

---

[6] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citation omitted).

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[8] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Ridge at Red Hawk*, 493 F.3d at 1177 (emphases in original).

[10] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

[11] *Iqbal*, 556 U.S. at 679.

[12] *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014).

[13] *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### III.    Analysis

Defendant argues that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine, res judicata, accord and satisfaction, the statute of limitations, and equitable estoppel, and that Plaintiffs' damages should be limited as a matter of law.  Further, Defendant argues that even if Plaintiffs' action survives these doctrines, several of Plaintiffs' claims fail to state a claim for which relief can be granted.  Plaintiffs respond by arguing that none of the doctrines identified by Defendant bar their claims.  Instead of substantively responding to Defendant's arguments that several of their claims fail to state a claim, however, Plaintiffs move to strike this portion of Defendant's motion.  The Court will begin its analysis by addressing the doctrines Defendant argues bar Plaintiffs' claims, as well as its argument in favor of limiting damages.  The Court will then address Defendant's assertion that several claims in the Complaint fail to state a claim for which relief can be granted, and Plaintiffs' motion to strike those arguments.

### A.    Motion for Summary Judgment

#### 1.    *The Rooker-Feldman doctrine*

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by Constitution and statute."[14]  The *Rooker-Feldman* doctrine precludes lower courts from "exercising appellate jurisdiction over final state-court judgments."[15]  Application of the doctrine extends only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting

---

[14] *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[15] *Id*. (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006)).

district court review and rejection of those judgments."[16]  In addition to claims actually decided by a state court, the doctrine also applies to "claims inextricably intertwined with a prior state-court judgment."[17]

" '[T]he type of judicial action barred by *Rooker-Feldman* consists of a review of the proceedings already conducted by the [state] tribunal to determine whether it reached its result in accordance with law.' "[18]  The doctrine prohibits a "federal action that tries to *modify or set aside* a state-court judgment *because* the state proceedings should not have led to that judgment,"[19] and only applies "if 'an element of the claim is that [a prior state-court] judgment was wrongful.' "[20]  Accordingly, for the doctrine to apply, the injury alleged in the federal suit must have been caused by the state-court judgment.[21]  "Seeking relief that is *inconsistent* with the state-court judgment is a different matter."[22]  Indeed, attempts to relitigate an issue previously determined by a state court should be analyzed under principles of issue or claim preclusion.[23]

The Tenth Circuit has previously addressed a case involving similar facts as those presented here, and held that the *Rooker-Feldman* doctrine did not deprive the district court of

---

[16] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

[17] *Kline*, 861 F.3d at 1180 (10th Cir. 2017) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006)).

[18] *Farris v. Burton*, 686 F. App'x 590, 592 (10th Cir. 2017) (quoting *PJ ex. rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010)) (second alteration in original).

[19] *Mayotte v. U.S. Bank Nat'l Assn.*, __ F.3d __, 2018 WL 504312, at *4 (10th Cir. 2018) (citing *Exxon Mobil*, 544 U.S. at 291) (first emphasis in original, second emphasis added).

[20] *Id.* (quoting *Campbell v. City of Spencer*, 682 F.3d 1278, 1284 (10th Cir. 2012)) (alteration in original).

[21] *Id.*

[22] *Id.* (emphasis in original).

[23] *Id.*

jurisdiction to hear the plaintiff's claims.[24]   In *Bolden*, the plaintiff had purchased two houses at a sheriff's sale that, unbeknownst to him, were set to be demolished because they were unfit for human habitation and beyond repair.   When Bolden learned of the planned demolition he sought injunctions in state court to prevent the demolition of the properties.[25]   The state court denied his requests for injunctions, and ordered that the city could proceed with the planned demolitions. Bolden later filed suit in federal court pursuing various actions against the city, and, under the *Rooker-Feldman* doctrine, the district court dismissed Bolden's claims that arose out of the city's demolition of his properties.   The Tenth Circuit reversed.

In its decision, the Tenth Circuit reasoned that "Bolden's federal suit did not seek to overturn the state-court judgment," and that his claims did not rest "on allegations that the state-court proceedings or judgment violated federal law, or that the judgment itself inflicted an injury."[26]   Further, the state-court judgment did not *cause* Bolden's injury because "all the state-court judgment did was *permit* the City to demolish Mr. Bolden's buildings—it did not *require* their demolition."[27]   Thus, even if a judgment in Bolden's favor would be inconsistent with the state-court judgment or deny a legal conclusion of the state court, because Bolden did not seek to overturn the state-court judgment, the Tenth Circuit found *Rooker-Feldman* inapplicable.[28]

Defendant's attempt to distinguish *Bolden* mischaracterizes its holding by suggesting that the Tenth Circuit's decision relied on the term "inextricably intertwined," which Defendant

---

[24] *See Bolden v. City of Topeka*, 441 F.3d 1129 (10th Cir. 2006).

[25] Bolden filed two separate suits and the state court consolidated the actions.

[26] *Id*. at 1138.

[27] *Id*. at 1145 (emphases in original).

[28] *See id*.

asserts "had no real meaning at the time the *Bolden* decision was reached."  The Tenth Circuit, however, did not rest its holding on any definition, or lack thereof, of the term "inextricably intertwined."  Rather, it found that Bolden did not ask the district court to overturn the state-court judgment, allege that the state-court proceedings or judgment violated federal law, or allege that the judgment itself inflicted an injury.[29]

Like the defendant in *Bolden*, Defendant argues that to the extent Plaintiffs seek relief from this Court for the demolition of the hotel, this Court lacks jurisdiction under the *Rooker-Feldman* doctrine.  And, like the plaintiff in *Bolden*, Plaintiffs do not seek to undo the state-court judgment issued here, allege that the state-court proceedings violated federal law, or allege that the state-court judgment caused the injuries alleged here.  The facts of this case are not materially different than those before the Court in *Bolden*.  Accordingly, following the Tenth Circuit's decision in *Bolden*, the Court rejects Defendant's argument that the *Rooker-Feldman* doctrine deprives this Court of jurisdiction to hear Plaintiffs' claims.

2.      *Res judicata*

Federal courts must afford a "state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."[30]  Because the City seeks to impute preclusive effect to a Kansas state court's decision, Kansas preclusion principles govern the Court's analysis.  Under Kansas law, the doctrine of res judicata has two aspects—claim preclusion and issue preclusion.  Claim preclusion prevents parties from relitigating a cause of action that has been finally adjudicated, whereas issue preclusion prevents

---

[29] *Id.* at 1138.

[30] *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

parties from relitigating issues conclusively determined in a prior action.[31]  Defendant argues that claim preclusion applies here.

"Kansas law is explicit and harsh in invoking claim preclusion to bar splitting a cause of action."[32]  Claim preclusion bars a party from pursing claims in a second lawsuit and has four elements: "(a) the same claim; (b) the same parties; (c) claims that were or could have been raised; and (d) a final judgment on the merits."[33]  "'[A] judgment which is not final and does not adjudicate the rights in litigation in a conclusive and definitive manner cannot'" support the application of claim preclusion to bar a subsequent action.[34]  Plaintiffs challenge the first and fourth elements.  Because the Court is without sufficient information to determine whether the Agreed Journal Entry constitutes a final judgment, it need not address the first element.

Relying on a Kansas Supreme Court decision,[35] Defendant argues that settlement agreements approved and journalized by a state court constitute final judgments on the merits. But *Honeycutt* does not command the result Defendant desires.  Rather, it states that "[a] voluntary dismissal of a case with prejudice, based on a settlement agreement that is approved by the court and journalized, is a final judgment on the merits."[36]  Thus, *Honeycutt* simply informs the Court that an agreement between the parties that is encompassed in a court order *can* serve as a final judgment on the merits—it does not require that *every* agreement between parties and

---

[31] *Jackson Trak Grp., Inc. v. Mid States Port Auth.*, 242 Kan. 683, 751 P.2d 122, 128 (1988).

[32] *Carter v. City of Emporia*, 815 F.2d 617, 622 (10th Cir. 1987).

[33] *Cain v. Jacox*, 302 Kan. 431, 354 P.3d 1196, 1199 (2015) (quoting *In re Tax Appeal of Fleet*, 293 Kan. 768, 272 P.3d 584, Syl. ¶ 2 (2012)).

[34] *Kester v. Shawnee Mission U.S.D. No. 512*, 252 F. Supp. 2d 1180, 1186 (D. Kan. 2003) (quoting *Fed. Land Bank of Wichita v. Vann*, 20 Kan. App. 2d 635, 890 P.2d 1242, 1245 (1995)).

[35] *Honeycutt v. City of Wichita*, 251 Kan. 451, 836 P.2d 1128 (1992).

[36] *Id.* at 1133 (citation omitted).

journalized by the Court constitutes a final judgment. Here, unlike *Honeycutt*, the Agreed Journal Entry did not voluntarily dismiss the case with prejudice. Rather, it plainly contemplated *future* dismissal by stating that if "Plaintiffs successfully complete the Kraybill plan then this Court case *will be dismissed*." Defendant has not presented any evidence to suggest that Plaintiffs' claims were dismissed or that the state-court case has terminated.

Plaintiffs allege that the state-court case has not terminated.[37] Plaintiffs quote the following language from the Tenth Circuit to explain when state-court proceedings have ended: "state proceedings have *not* ended when (1) the state court issues only an interlocutory order (as opposed to a judgment) and (2) the state-court litigation is still ongoing when a party challenges that interlocutory order in federal court."[38] Plaintiffs argue that the Journal Entry is an interlocutory order, and that the state-court case never terminated.[39] Defendant responds by suggesting that the state-court case ended because it reached the point where neither party sought further action. Defendant, however, has provided no evidence to support its argument.

The parties disagree as to the status of the state-court action, and neither party has offered evidence regarding the status of the case. Accordingly, there is a factual dispute as to the finality of the state-court proceedings, and summary judgment is not proper.

---

[37] Plaintiffs analyze whether the Journal Entry is a "final judgment on the merits" in their response regarding the *Rooker-Feldman* argument—they do not provide any analysis of this requirement in response to the res judicata argument, but simply state that the journal entry is not a final judgment. Accordingly, the Court's references to Plaintiffs arguments are to those arguments asserted in the context of *Rooker-Feldman*.

[38] Doc. 30, p. 5 (quoting *Brown v. Chappelle*, 659 F. App'x 458, 459 n.1 (10th Cir. 2016)).

[39] Plaintiffs also argue that no "final judgment" exists because K.S.A. §§ 60-901 *et seq.* required the state court to conduct an evidentiary hearing before entering a final judgment. Plaintiffs do not cite any specific language requiring this result. A review of the statutes at K.S.A. §§ 60-901 *et seq.* reveals that the language closest to supporting this claim states that "[n]o temporary injunction shall be granted until after reasonable notice to the party to be enjoined and an opportunity to be heard." K.S.A. § 60-905(a). Here, after Plaintiffs filed their Petition, the parties agreed to specific terms to govern their dispute going forward and the Court issued an order adopting those terms. Defendant was not denied an opportunity to be heard. Accordingly, the Court rejects Plaintiffs' argument that the Journal Entry cannot be a "final judgment" simply because no evidentiary hearing occurred.

3.    *Accord and satisfaction*

Under Kansas law, "to constitute an accord and satisfaction there must be an offer in full satisfaction of the obligation accompanied by such acts and declarations or under such circumstances that the party to whom the offer is made is bound to understand that if he accepts it, it is in full satisfaction of and discharges the original obligation."[40]   Defendant bears the burden of proof on its accord and satisfaction defense.[41]

Defendant's motion barely even attempts to demonstrate how the doctrine of accord and satisfaction applies to the facts of this case—its analysis consists of two conclusory sentences. Its reply brief improperly focuses on *Plaintiffs'* failure to deny the existence of the elements of accord and satisfaction identified in a Tenth Circuit case.  First, the Tenth Circuit case cited by Defendant applied Utah law—not Kansas law—and is not controlling here.[42]   Second, Defendant first argued that the elements of accord and satisfaction are satisfied in its *reply*—it is not Plaintiffs' responsibility to anticipate and respond to arguments that Defendant first asserts in its reply.  Third, Defendant has not identified uncontroverted facts that satisfy the requirements for accord and satisfaction.  Defendant has failed to demonstrate how accord and satisfaction applies here, and has failed to meet its burden to show that the doctrine bars Plaintiffs' claims.

4.    *Statute of limitations*

Defendant argues that although Plaintiffs assert claims based on actions taken in March 2015, the applicable two-year statute of limitations[43] for Plaintiffs' claims really began to run

---

[40] *Sanders v. Birmingham*, 214 Kan. 769, 522 P.2d 959, 964-65 (1974).

[41] *Id.* at 965.

[42] *See Nev. Half Moon Mining Co. v. Combined Metals Reduction Co.*, 176 F.2d 73 (10th Cir. 1949).

[43] Plaintiffs do not contest that the applicable statute of limitations is two years.

either in June 2014 (when Defendant originally decided to demolish the hotel), in September 2014 (when Defendant accepted a bid for demolition), or on January 20, 2015 (when Defendant signed a notice to proceed with the demolition). It argues that "[t]he nut of Plaintiff's [sic] complaint is that they have been deprived of their property," and that this occurred in June 2014, when Defendant took control of the building by padlocking it and excluding Plaintiffs, and that it was reasonably ascertainable that the hotel would be destroyed in June 2014, September 2014, or, at the latest, January 2015.

Plaintiffs' response consists of three arguments: (1) "[t]he injury in this case was the destruction of the hotel and the loss of thousands of historic artifacts, memorabilia, museum pieces and personal items belonging to Plaintiffs," (2) Defendant did not finally decide to demolish the hotel and personal property until the City Council meeting on March 5, 2015, and (3) K.S.A. § 60-519 tolls the running of the statute of limitations from September 16, 2004, to July 1, 2015.[44]

   a.  State law claims

K.S.A. § 60-513(b) instructs that a cause of action for trespass upon real property, for taking, detaining, or injuring personal property, and for an injury to the rights of another (not arising on contract or otherwise specifically enumerated) "shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then . . . [when] the fact of injury becomes reasonably ascertainable to the injured party."

---

[44] Plaintiffs' argument that the entry of the Agreed Journal Entry effectively imposed a stay on the running of the statute of limitations, ignores the plain and unambiguous language allowing Defendant to proceed with demolition if Plaintiffs failed to secure $110,000 for repairs by January 15, 2015. Plaintiffs undisputedly failed to do so. Assuming, without deciding, that K.S.A. § 60-519 operates as argued, it would have at most stayed the running of the statute of limitations to January 15, 2015.

"In construing the statute of limitations for tort actions," the Kansas Supreme Court has consistently "interpreted the phrase 'substantial injury' to mean 'actionable injury.' "[45] Consistent with this phrase, Kansas courts have held that when determining when an action accrues, the "true test . . . is that point in time at which plaintiff could have first filed and prosecuted an action to a successful conclusion."[46] "[A] cause of action does not accrue until all of the essential elements are satisfied."[47] Thus, where a defendant's actions allegedly cause an injury, those actions do "not become actionable until the plaintiff sustains damages as a result."[48]

Defendant has failed to identify any caselaw supporting its argument that the *decision* to commit a tortious act, as opposed to the actual commission of the tortious act, starts the running of the statute of limitations. Likewise, Defendant has made no attempt to show that all of the elements of any of Plaintiffs claims had been established prior to the actual demolition of the hotel and its contents, such that Plaintiffs could have pursued their claims prior to March 2015. Although Plaintiffs could and did file an action seeking to enjoin Defendant's actions, they could not have filed an action for damages resulting from the demolition of their property because the demolition had not yet occurred.[49]

---

[45] *LCL, LLC v. Falen*, 53 Kan. App. 2d 651, 390 P.3d 571, 577 (2017) (citations omitted).

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] Further, with regard to Plaintiffs' personal property, Defendant has not presented evidence suggesting that it decided to destroy the personal property before March 5, 2015. Rather, Defendant alleges that the City Council asked Plaintiffs if they had plans to remove personal property from the hotel before demolition—this can reasonably be interpreted to suggest that Defendant had not decided to demolish the property inside the hotel before March 5, 2015. *See* Def.'s Ex. O, Meeting Minutes (Mar. 5, 2015) (discussing whether there were plans to remove any further personal items from the structure before demolition).

b.    Federal claims

Although Kansas law governs the length of the statute of limitations for Plaintiffs § 1983 action, federal law governs when the statute of limitations begins to run.[50]  Under federal law, "[a] civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."[51]  Since the injury alleged here is a violation of Plaintiffs' constitutional rights, such claims accrued when Plaintiffs knew or should have known that their rights were violated.[52]  Here, Plaintiffs' allege that their due process rights were violated when Defendant demolished their hotel and personal property after the March 5, 2015, meeting.

Citing *Gragg v. McKune*,[53] Defendant argues that "[a] substantive violation of due process is complete when an alleged wrongful action is taken," and that "the alleged wrongful action that the Defendant took, deciding to demolish the Hotel, and taking possession of the hotel to the exclusion of Plaintiffs[,] occurred more than two years before the filing of this action."[54] This argument ignores Plaintiffs' claims for damages and attempts to recharacterize Plaintiffs' claims.  Plaintiffs do not argue that Defendant did not have authority to padlock the hotel in June 2014, or to keep the public and Plaintiffs out of the hotel.  Rather, Plaintiffs argue that Defendant violated their rights when it had the hotel and its contents demolished in March 2015, instead of allowing Plaintiffs to repair the hotel.

---

[50] *Romero v. Lander*, 461 F. App'x 661, 666 (10th Cir. 2012).

[51] *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998).

[52] *Id*.

[53] 28 Kan. App. 2d 256, 16 P.3d 311 (2000)

[54] Doc. 21, p. 13.

Plaintiffs' Complaint seeks damages for the destruction of the hotel and Plaintiffs' personal property contained therein.  It is undisputed that the demolition of the hotel had not begun as of March 5, 2015.[55]  Plaintiffs filed this case on February 24, 2017.  Defendant has failed to demonstrate that the statute of limitations bars Plaintiffs' claims.

### 5.    *Equitable estoppel*

"Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct."[56]  A party asserting equitable estoppel has the burden of establishing (1) "that another party, by acts, representations, admissions, or silence when that other party had a duty to speak, induced the party asserting estoppel to believe certain facts existed," (2) that the party asserting estoppel "reasonably relied and acted upon such belief," and (3) that the party asserting estoppel would "now be prejudiced if the other party were permitted to deny the existence of such facts."[57]  If the facts "are ambiguous or subject to more than one construction" the Court will not invoke the doctrine of equitable estoppel.[58]  Whether to apply equitable estoppel "rests within the sound discretion of the district court," and this discretion is abused only "when no reasonable person would take the view adopted by the district court."[59]

---

[55] Defendant's statement of facts alleges that at the March 5, 2015, special meeting the City Council "asked the Plaintiffs if they had plans to remove property from the hotel *before demolition*."  Doc. 21, p. 5 (emphasis added).

[56] *Steckline Commncs., Inc. v. Journal Broad. Grp. of Kan., Inc.*, 305 Kan. 761, 388 P.3d 84, 91 (2017) (quoting *United Am. State Bank & Trust Co. v. Wild W. Chrysler Plymouth, Inc.*, 221 Kan. 523, 561 P.2d 792, 795 (1977)).

[57] *Id.* at 91-92 (quoting *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 157 P.3d 1109, 1120 (2007)).

[58] *Id.* at 92 (quoting *Rockers v. Kan. Turnpike Auth.*, 268 Kan. 110, 991 P.2d 889, 894 (1999)).

[59] *Shaffer v. City of Topeka*, 30 Kan. App. 2d 1232, 57 P.3d 35, 38 (2002) (citations omitted).

Defendant argues that Plaintiffs voluntarily agreed that if they did not raise the funds necessary to repair the hotel by January 15, 2015, that Plaintiffs would not oppose the demolition of the hotel. Reasonably relying on these actions and representations, Defendant argues, it ceased efforts to demolish the hotel and agreed to allow Plaintiffs additional time to secure financing for repairs.

Defendant's argument is conclusory and unsupported, and although Plaintiffs' opposition also lacks substantive legal analysis, it is Defendant's burden to demonstrate that it is entitled to summary judgment, and Defendant has failed to do so. Defendant has not demonstrated how the elements of equitable estoppel are satisfied. For example, Defendant wholly fails to demonstrate how it has been or would be prejudiced by Plaintiffs' actions. Defendant appears to argue that prejudice exists because Defendant ceased demolition efforts. Defendant, however, does not show how temporarily ceasing demolition efforts caused it prejudice, and it has not identified any other alleged prejudice. Instead, Defendant focuses on the fact that Plaintiffs have taken an inconsistent position—even so, however, Defendant must still show prejudice as a result. Defendant has failed to show that equitable estoppel bars Plaintiffs' claims as a matter of law.

6.   *Real property damages*

Defendant argues that "this Court should rule as a matter of law that the damages for Plaintiffs' property claims are limited to the difference in the before and after value of the property."[60] Defendant's argument involves the resolution of factual matters that have not yet been developed in the record. For example, Defendant claims that the Hotel had "next to no commercial value," but has not established this as an uncontested fact. Further, Defendant's

---

[60] Doc. 21, p. 20. Plaintiff has not substantively responded to this argument, but instead filed a motion to strike this argument.

brief, as well as the only case cited in support of its argument, recognizes that the calculation of damages sought by Defendant is only one method of calculating damages. Indeed, other measures of damages may be appropriate, depending upon the circumstances.[61] The factual record has not yet been developed to allow the Court to rule as a matter of law as to what measure of damages is proper under the circumstances presented here. Accordingly, the Court finds that Defendant has failed to meet its burden to establish that it is entitled to judgment as a matter of law on this issue.

## B.    Motion to Dismiss

Defendant argues that Plaintiffs failed to adequately plead a cause of action for intentional infliction of emotional distress and for due process violations, and that these claims should be dismissed for failing to state a claim for which relief can be granted or because the uncontroverted facts entitle Defendant to summary judgment. Defendant also argues that Plaintiff cannot pursue both a claim for both intentional and negligent infliction of emotional distress, and that Plaintiffs' negligent infliction of emotional distress claim should be dismissed. Plaintiffs did not substantively respond to these arguments, but instead, filed a motion to strike Defendant's arguments. The Court will first analyze the merits of Plaintiffs' motion to strike, and if appropriate, will proceed to Defendant's arguments.

### 1.    *Plaintiffs' motion to strike*

Plaintiffs take a perplexing position in their motion to strike. Defendant filed a motion, titled as a motion for summary judgment, asserting arguments under a summary judgment

---

[61] *See, e.g.*, *Evenson v. Lilley*, 295 Kan. 43, 282 P.3d 610, 616 (2012) (recognizing loss of income production, replacement costs, and aesthetic loss as considerations); *Anderson v. Rexroad*, 180 Kan. 505, 306 P.2d 137, 144 (1957) (recognizing potential recovery for the loss of use of property, including loss of rental).

standard and arguments under a motion to dismiss standard. Plaintiff complains that the Defendant turned what the Scheduling Order anticipated would be a motion to dismiss into a motion for summary judgment. Plaintiffs then substantively respond to most of the arguments asserted under the summary judgment standard while at the same time moving to strike Defendant's only arguments brought under a motion to dismiss standard.[62] Plaintiffs argue that Defendant pursues grounds not contemplated by the Scheduling Order, and that Defendant expanded its argument for failure to state a claim to include fact-based issues.[63]

First, the Scheduling Order clearly contemplates the filing of a motion to dismiss based on failure to state a claim. It states:

> A motion to dismiss is expected to be filed in this case, based on jurisdiction, *Rooker-Feldman* doctrine, res judicata, collateral estoppel, statute of limitation, and failure to state a claim. Provided such defenses have been timely preserved, any motions to dismiss asserting . . . failure to state a claim upon which relief can be granted . . . must be filed by June 30, 2017.[64]

Defendant timely filed its motion, and its argument that three of Plaintiffs' claims fail to state a claim for which relief can be granted clearly fall within the Scheduling Order's language.

Second, Defendant clearly and unambiguously seeks dismissal under a motion to dismiss standard. Defendant begins Section V of its memorandum by reciting the standard applicable to motions to dismiss, and continues to argue that Plaintiffs failed "to plead key elements of a claim for intentional infliction of emotional distress," failed to allege facts in their Complaint sufficient

---

[62] Plaintiffs motion to strike states that they are filing a "Response to Defendant's Motion for Summary Judgment addressing all grounds contemplated by the Scheduling Order for what was to be a motion to dismiss."

[63] Plaintiffs also contest Defendant's request for a legal determination of the proper measure of damages. Because the Court has denied that request, Plaintiffs' motion is moot on this issue. Accordingly, the Court addresses Plaintiffs' request to strike Defendant's argument that Plaintiffs failed adequately plead certain causes of action.

[64] Doc. 16, p. 9. Defendant timely filed its motion on June 21, 2017.

to satisfy the required elements for intentional infliction of emotional distress, and failed to state in their Complaint "how the process provided to them was deficient" or "lacking in due process."

Although Defendant alternatively requests summary judgment on these claims, it clearly and unambiguously asserts that dismissal is proper under a motion to dismiss standard. Plaintiffs strategically chose not to substantively respond to Defendant's arguments that the Complaint fails to state a claim for which relief can be granted and have waived their ability to do so. Plaintiffs' motion to strike is denied and the Court will consider Defendant's arguments that three of Plaintiff's claims fails to state a claim for which relief can be granted.

### 2.   *Failure to state a claim for which relief can be granted*[65]

#### a.   Intentional infliction of emotional distress

Under Kansas law, the tort of intentional infliction of emotional distress requires the proof of four elements: "(1) [t]he conduct of defendant must be intentional or in reckless disregard of plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress must be extreme and severe."[66] The absence of any element destroys Plaintiffs' claim.

Courts must determine as a matter of law (1) whether "the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery," and (2) whether "the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure

---

[65] Although the Court considered facts not contained in Plaintiffs' Complaint in prior sections of this Memorandum and Order analyzed under a motion for summary judgment standard, the Court's analysis in this section is governed by the standard applicable to motions to dismiss. Thus, the Court considers only those facts and allegations contained in Plaintiffs' Complaint, and all well-pleaded facts in the Complaint are assumed to be true and are viewed in the light most favorable to Plaintiffs.

[66] *Roberts v. Saylor*, 230 Kan. 289, 637 P.2d 1175, 1179 (1981).

it."[67]    Defendant argues that Plaintiffs have failed to plead facts sufficient to satisfy either of these requirements.    Because the Court concludes that Plaintiffs have failed to plead facts sufficient to satisfy the requirement that the distress must be extreme and severe, it is unnecessary to address whether Plaintiffs have properly plead the remaining elements.

"Emotional distress passes under various names such as mental suffering, mental anguish, [and] nervous shock, and includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, embarrassment, anger, chagrin, disappointment, and worry."[68]    Liability for intentional infliction of emotional distress, however, may only attach when emotional distress is extreme.[69]    Thus, while "no laundry list of what qualifies as the requisite level of severity" exists, "headaches, sleeplessness, irritability, anxiety, depression, listlessness, lethargy, intermittent nightmares, and the like would probably not suffice."[70]

Plaintiffs' Complaint includes only a conclusory recitation of the elements of intentional infliction of emotional distress, including that "Hostetler suffered extreme emotional distress, injuries and damages as a direct result of Defendant's conduct."    This blanket statement merely reflects a legal conclusion that Plaintiff suffered extreme emotional distress.    Plaintiffs do not support this conclusion with any factual allegations that, when viewed in the light most favorably to Plaintiffs, sufficiently support a claim for intentional inflection of emotional distress.[71]

---

[67] *Id.*

[68] *Id.* at 1180.

[69] *Id.*

[70] *Dana v. Heartland Mgmt. Co., Inc.*, 48 Kan. App. 2d 1048, 301 P.3d 772, 781 (2013) (quoting *Valadez v. Emmis Cmmc'ns.*, 290 Kan. 472, 229 P.3d 389, 395 (2010)).

[71] *See, e.g.*, *Lee v. Reed*, 221 F. Supp. 3d 1263, 1274 (D. Kan. 2016) (dismissing complaint that alleged plaintiff "suffered extreme emotional distress, embarrassment, shame, humiliation and severe depression"); *S. Star Cent. Gas Pipeline, Inc. v. Cline*, 754 F. Supp. 2d 1257, 1265 (D. Kan. 2010) (recognizing factual allegations that

Accordingly, because Plaintiffs failed to adequately plead a cause of action for intentional infliction of emotional distress, the Court grants Defendant's motion to dismiss this claim.

> b.    Negligent infliction of emotional distress

Defendant argues that because Plaintiffs have asserted a claim for intentional infliction of emotional distress and have pleaded intentional conduct on the part of Defendant, that Plaintiffs cannot also pursue a claim for negligent infliction of emotional distress. Defendant's citation to *Curts v. Dillard's*[72] does not support its argument, and the Federal Rules of Civil Procedure explicitly authorize litigants to plead alternative theories of recovery, even when those theories are inconsistent.[73]

Although the Court rejects Defendant's reasoning for why Plaintiffs' claim should be dismissed, it nevertheless concludes that dismissal is proper. Plaintiffs have merely provided a conclusory recitation of the elements of this claim and have failed to plead facts sufficient to support their conclusory assertions—specifically with regard to the physical injury requirement. Accordingly, because negligent infliction of emotional distress requires that the defendant's conduct resulted in immediate physical injury to the plaintiff, and Plaintiffs fail to identify a

---

plaintiff experienced helplessness, vulnerability, and stress, without more, as insufficient as a matter of law to state a claim for intentional infliction of emotional distress); *McIlrath v. City of Kingman*, 324 P.3d 343 (Kan. Ct. App. 2014) (unpublished) (holding that, without more, allegations that defendants caused "physical and emotional damage and caused [plaintiffs] to be extremely anxious, fearful, extremely agitated, extremely upset, and extremely fearful," were insufficient to state a claim for intentional infliction of emotional distress).

[72] 30 Kan. App. 2d 814, 48 P.3d 681, 682 (2002) (disapproved on other grounds by *Hallam v. Mercy Health Ctr. of Manhattan, Inc.*, 278 Kan. 339, 97 P.3d 492 (2004)). The *Curts* court explained that negligent infliction of emotional distress requires that the defendant's conduct resulted in immediate physical injury to the plaintiff. *Id.* The court analyzed an "exception" to the physical injury requirement recognized in some Kansas cases that allows a plaintiff to pursue a claim for negligent infliction of emotional distress without alleging the presence of a physical injury if the "plaintiff charges the defendant with acting in a willful or wanton manner, or with the intent to injure." *Id.* The court concluded that this "exception" essentially converts the claim into "nothing more than the tort of outrage." *Id.* The court did not hold that a plaintiff may not plead torts for both intentional and negligent infliction of emotional distress.

[73] Fed. R. Civ. P. 8(d).

physical injury allegedly suffered, the Court dismisses Plaintiffs' claim for negligent infliction of emotional distress for failure to state a claim.[74]

      c.     Due process

Under "Count I – Violations of Plaintiffs' Due Process Rights," Plaintiffs allege that Defendant violated Plaintiffs "substantive and procedural due process rights" and "rights to equal protection of the laws." Plaintiffs assert that Defendant deprived them of their property and liberty interests, failed to provide proper notice to Plaintiffs of each step Defendant took with respect to its actions which culminated in the demolition of their real and personal property, and denied Plaintiffs notice and an opportunity to be heard with respect to "each of the aforementioned actions Defendant took in violation of Plaintiffs' rights." Defendant argues that Plaintiffs' Complaint does not state how the process provided by Defendant was deficient.[75]

Courts assessing whether a procedural due process violation occurred, "must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process."[76] Defendant does not argue that Plaintiffs have not identified a protected interest entitled to due process protections, but rather, argues that Plaintiffs have failed to sufficiently plead that they were not afforded an appropriate level of process.

---

[74] *See Curts*, 48 P.3d at 682.

[75] Defendant's argument that Plaintiffs fail to state a claim for violation of due process is one paragraph and includes one legal citation regarding when a procedural due process claim is actionable. Defendant ignores Plaintiffs' allegations that it violated Plaintiffs' substantive due process and equal protections rights. Accordingly, the Court only addresses Plaintiffs' purported claim for violations of procedural due process.

[76] *Guttman v. Khalsa*, 669 F.3d 1101, 1113-14 (10th Cir. 2012) (quoting *Hatfield v. Bd. of Cty. Comm'rs*, 52 F.3d 858, 862 (10th Cir. 1995)).

While Plaintiffs' Complaint "does not need detailed factual allegations," Plaintiffs' "obligation to provide the grounds of [their] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[77] Plaintiffs have failed to provide more than a formulaic recitation of the elements of a procedural due process claim and the Complaint does not present facts that, when accepted as true and viewed in the light most favorable to Plaintiffs, would state a claim for relief for violations of Plaintiffs' procedural due process rights.

While Plaintiffs' Complaint concludes that they were denied notice and an opportunity to be heard, none of the facts asserted by Plaintiff support these conclusory statements.  Plaintiffs do not allege that the City Council failed to provide them notice of the March 5, 2015, meeting, nor do they allege that they were denied an opportunity to be heard at this meeting.  To the contrary, Plaintiff states that Hostetler appeared with legal counsel and a construction representative at the March 5, 2015, meeting, that Hostetler, her legal counsel, and a representative from a construction company presented arguments and evidence in support of restoring and renovating the hotel, and that after the presentation of such arguments and evidence the City Council voted to demolish the hotel.[78]  Plaintiffs do not identify any actions Defendant allegedly took without providing notice or an opportunity to be heard.  Plaintiffs have failed to provide any factual support for their conclusory assertions that they were denied procedural due process, and their Complaint fails to state a claim for procedural due process for which relief can be granted.  Accordingly, Plaintiffs' procedural due process claim is dismissed.

---

[77] *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014) (quoting *Twombly*, 550 U.S. at 550).

[78] *See* Doc. 1.

## IV.    Conclusion

For the reasons stated above, the Court denies Plaintiffs' motion to strike, and grants in part and denies in part Defendant's motion for summary judgment/motion to dismiss. Defendant's arguments in favor of summary judgment involve either a genuine issue of material fact or lack merit.  Plaintiffs, however, have failed to adequately plead claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and violations of procedural due process; accordingly, the Court dismisses these claims for failure to state a claim upon which relief can be granted.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 20) is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiffs' claims for intentional infliction of emotional distress, for negligent infliction of emotional distress, and for violations of procedural due process are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Portions of Defendant's Motion for Summary Judgment (Doc. 29) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 16th day of February, 2018.


*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE